UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL ACTION |
| VERSUS | * | NO. 23-87 |
| RICKY WILSON | * | SECTION "O" (2) |

**ORDER AND REASONS**

Before me is Defendant Ricky Wilson's Motion to Reopen Detention Hearing.  ECF No.
93.  The Government filed an Opposition Memorandum.  ECF No. 100.  The Court held a hearing
on April 9, 2025, and granted the parties' requests for supplemental briefing.  ECF No. 102.  The
parties have filed supplemental Memoranda.  ECF Nos. 103, 105, 107.

Having considered the record, the submissions and  arguments of counsel, the evidence
presented, both at the May 19, 2023, detention hearing and in connection with this April 9, 2025,
hearing, and the applicable law, the Court DENIES Defendant's Motion to Reopen Detention
under § 3142(f) and DENIES WITHOUT PREJUDICE Defendant's Motion to Reopen Detention
under § 3145(b) for the reasons stated herein.

I.      **BACKGROUND**

The grand jury issued a two-count indictment on May 5, 2023, charging that, on September
10, 2022, Defendant committed arson affecting interstate commerce (i.e., three vehicles:
Chevrolet Camaro, BMW Z4, and Porsche Macan) and possessed unregistered firearms (i.e., three
improvised incendiary devices known as Molotov cocktails).  ECF No. 1.  The first count carries
with it a mandatory minimum of 5 years and maximum penalty of 20 years and the second count
carries with it a maximum penalty of up to 10 years of imprisonment, with both counts also
authorizing monetary fines and assessments.  ECF No. 15 (recording).

1

A. **Evidence at the May 19, 2023, Detention Hearing**

The Court held a detention hearing on May 19, 2023, on the Government's motion pursuant to 18 U.S.C. § 3142(f)(1)(E), during which Defendant Wilson was represented by Assistant Federal Defender Annalisa Miron. ECF No. 17. Before the hearing, the Court received a report from Pretrial Services recommending detention. ECF No. 14. Defendant attended Indiana State University and obtained a Bachelor of Arts in law administration in 2015, and he is two semesters shy of a Master's Degree in adult school supervision. *Id.* at 1. Although Defendant has no prior convictions, he had (1) pending charges for use of a firearm during a crime of violence and possession with intent to distribute relating to a November 9, 2022, arrest and (2) an active warrant for aggravated assault after an April 29, 2023, incident where he was alleged to have brandished a firearm at a Waffle House patron after being asked to lower the volume of his music. *Id.* at 3.

At the hearing, the Government called the case agent-in-charge of the investigation, Officer Robert Stoltz, to testify, and it introduced Exhibit Nos. 1, 3-8, 10-12, and 14. ECF Nos. 17, 98. Officer Stoltz testified that the arson incident occurred on September 10, 2022, at approximately 1:00 a.m. at a Westbank Expressway used car auto lot. Evidently, Defendant purchased a Mercedes from that used car lot in June 2022, and three days before the September 10, 2022, incident, Defendant had contacted the used car lot owner about needed repairs for his car. The owners indicated they would repair the car but Defendant would have to wait while it was being fixed. Defendant requested a loaner car, after which the conversation grew heated. When the owner told him to take his warranty and have his car repaired elsewhere, Defendant allegedly responded with threats along the lines of "I'll be back" or "You'll see what I can do."

Video evidence from the car dealership reflects a man placing three improvised devices near cars, lighting them on fire, and then shooting toward the dealership building. Officer Stoltz

2

reviewed the September 10, 2022, video coverage with employees of the dealership, and they

identified Defendant as the perpetrator.   In the course of investigating the crime, Officer Stoltz

obtained telephone GPS information that reflected that one of Defendant's phones was at the used

car lot on the night of the incident.   Evidence introduced at the hearing also included an Instagram

photograph of Defendant with a Glock and attached extended magazine visible in his right pocket

(Exhibit 14, ECF No. 98-4) as well as photographs of a weapon found at his home (Exhibits 11,

12, ECF Nos. 98-2, 98-3).   Ballistics tests confirmed that the firearm seized matched the firearm

used at the auto dealership shooting on September 10, 2022, and testing confirmed the weapon

contained Defendant's DNA.

Officer Stoltz also testified, based on a police report and his interview with the victim that,

while at Waffle House in the early morning of Saturday, April 29, 2023, Defendant took a firearm,

equipped with a drum magazine, out of his bag and threatened a customer.   The Government

introduced the video from the Waffle House incident.  Ex. 8.  Officer Stoltz indicated the firearm

used in Defendant's Instagram video (Ex. 3) appears to be the same weapon.

On May 15, 2023, Officer Stoltz attempted to arrest Defendant by stopping him while

driving his vehicle, but Defendant fled.   A chase ensued on Deckbar Avenue, onto Earhart

Boulevard, past South Carrollton Avenue and through various neighborhoods until Officer Stoltz

ended the chase as it became too dangerous.  Officer Stoltz testified that the chase speeds exceeded

100 mph and Defendant ran multiple red lights.  Ex. 5, 6.  After ending the chase, Officer Stoltz

returned to the residence to execute a search warrant.   While executing the warrant, Defendant

telephoned his girlfriend who was at the residence.   She handed the phone to Officer Stoltz's

supervisor who indicated that Defendant would turn himself in, which he did at 6:00 p.m. after

making an Instagram post.  Exhibit 1.  The Government introduced excerpts from custodial videos

reflecting Defendant's anger and agitation over his girlfriend being held in custody.  Ex. 4.

Defendant did not call any witnesses or present any evidence at the hearing.  ECF No. 17.

In closing arguments, the Government argued that Defendant's default position was violence, which was escalating with increased violence and aggression in the preceding 6 months, pointing to the attack on the dealership and Waffle House incident.  In addition, the Government cited to Defendant's flight efforts during which he drove at over 100 mph throughout various neighborhoods in the middle of the day.

Considering the nature and circumstances of the charged offenses (use of incendiary devices and shooting at the building with an extended magazine weapon), the weight of the evidence (including the ballistics match and GPS evidence establishing Defendant's presence at the auto dealership), the Waffle House incident, and Defendant's flight in excess of 100 mph through city neighborhoods in the middle of the day, and the recommendation of pretrial services, the undersigned issued an Order of Detention.  ECF No. 19.  At the conclusion of the hearing, the Court noted that it did not see, and no one (including Defendant) pointed to, any conditions or combination of conditions that were available to reasonably assure the safety of the community.

### B.  The Superseding Indictment

On July 28, 2023, the Grand Jury issued a superseding indictment charging Defendant with five additional counts:  two counts of possession with intent to distribute, two counts of possession of a firearm in furtherance of a drug trafficking crime, and one count of possession of a firearm with an obliterated serial number.  ECF No. 23.  As these charges were added after the May 19, 2023, detention hearing, these charges did not factor into the original detention decision.

### C.  The  Motion to Suppress

On February 11, 2025, Judge Long granted Defendant's Motion to Suppress evidence

seized from his vehicle pursuant to a search warrant executed on November 9, 2022, and evidence

seized from 212 Central Avenue pursuant to a May 15, 2023, search warrant (ECF No. 90 at 4-13,

21-31), denied the motion as to the DNA obtained pursuant to a November 3, 2022, buccal swab

warrant and Defendant's custodial interview (*id.* at 13-21, 32-39), and granted in part the motion

to suppress the video interview, suppressing statements and dialogue before time stamp 28:25 but

not suppressing statements after 28:25 (*id.* at 39-46).  He also dismissed Count 7 (possession of a

firearm with an obliterated serial number) of the Superseding Indictment.  *Id.* at 46; *see also* ECF

No. 87.

### D.  <u>The Motion to Reconsider Detention</u>

Defendant now seeks to reopen detention on the basis that the "weight of the evidence" is

no longer strong in light of Judge Long's decision to grant in part Defendant's Motion to Suppress.

ECF No. 93 ¶ 3.  Defendant contends that this decision constitutes new, material information

authorizing the court to re-open detention under § 3142(f).  *Id.*  Further, he argues that the

Government's appeal of that ruling will result in further delay of the resolution of his case, during

which he remains incarcerated in violation of his due process rights, which also supports reopening

the detention decision.  *Id.*; *see also* ECF Nos. 91 (Notice of Appeal); 106 (Order cancelling

pretrial conference and trial pending the Fifth Circuit's resolution of the appeal).

The Government opposes the motion, arguing that Judge Long's ruling does not constitute

new evidence that has a material bearing on the issue of whether any conditions of release would

reasonably assure the safety of the community as required to reopen detention under § 3142(f).

ECF No. 100 at 4.  It argues that the indictment serves as a probable cause finding that Defendant

committed the crimes alleged, and his use of incendiary devices (Molotov Cocktails) to destroy

property, randomly firing bullets at dealership offices without knowledge of occupancy, the high-

speed chase of speeds up to 100 mph in densely populated areas of New Orleans, and possession

and threatening use of a handgun at a Waffle House all established that Defendant is a danger to

the community. *Id.* at 4 (citing *Giordenello v. United States*, 357 U.S. 480, 487 (1958); *United

States v. Trosper*, 809 F.2d 1107, 1110 (5th Cir. 1987) (indictment establishes probable cause)).

The Government further argues that Defendant's discussion of the length of his detention

is not a § 3142(f) matter but essentially raises a due process challenge, which must be addressed

on a case-by-case basis considering four factors in addition to the §3142(g) factors:

> In determining whether due process has been violated, a court must consider not
> only factors relevant in the initial detention decision, such as the seriousness of the
> charges, the strength of the government's proof that the defendant poses a risk of
> flight or a danger to the community, and the strength of the government's case on
> the merits, but also additional factors such as the length of the detention that has in
> fact occurred or may occur in the future, the non-speculative nature of future
> detention, the complexity of the case, and whether the strategy of one side or the
> other occasions the delay.

*Id.* at 5 (citing *United States v. Hare*, 873 F.2d 796, 801 (5th Cir. 1989)). Although Defendant has

been detained for 23 months, the Government argues that this period is not excessively prolonged,

there is no evidence the Government has caused any delay, and the case is complex. *Id.* at 6-8.

In his Supplemental Memorandum, Defendant argues that his pretrial detention has been

excessively long, crossing the line from regulatory to punitive. ECF No. 103. Defendant notes

that he has already been detained for 23 months, and he is likely to be detained for another year

given that Judge Long did not address his alternative bases to suppress evidence raised by motion,

which he will raise again should the Fifth Circuit reverse. *Id.* at 2 & n.1. Because Judge Long

suppressed a substantial amount of evidence, Defendant argues the Government must carry the

heavier burden applicable when all of the Government's evidence is suppressed. *Id.* at 3.

Defendant distinguishes the cases cited by the Government to support the argument that detentions

of even 36 months are not excessive by arguing that those cases involved national security threats

and significant flight risks. *Id.* at 4-5. He further argues that this case is not complex and there is no firm trial date, rendering continued detention speculative due to the appeal. *Id.* at 5-7. Finally, Defendant argues that the earlier delay was attributable to both parties, but the appeal delay is attributable to the Government because it failed to seek an expedited appeal. *Id.* at 8.

In its Supplemental Memorandum, the Government reiterates its argument that the suppression decision is not new evidence that has a "material bearing" on the issues of flight risk or danger. ECF No. 105 at 1-3. It further argues that, even if the decision were "new evidence," suppressed evidence may be considered in ruling on detention. *Id.* at 4-5. It also argues that Defendant's mother's home as an available residence is not new evidence and should not be considered on a motion to reopen. *Id.* at 3.

In Reply, Defendant argues that he seeks to reopen detention based on Judge Long's suppression ruling, not the current availability of his mother's home as a residence, and nothing in the Bail Reform Act precludes a defendant from updating the court regarding the status of a viable residence. ECF No. 107 at 1-2. Defendant concedes that the Court may consider suppressed evidence in making the detention decision but argues that the Government can no longer meet its burden on the § 3142(g) factors given Defendant's lack of prior criminal record, lack of failure to appear history, and community ties including the now available suitable residence. *Id.* at 2-3. Defendant reiterates his argument that the Government is causing this delay, noting that Government refused to consent to an expedited appeal. *Id.* at 3-4.

## II.     APPLICABLE LAW AND ANALYSIS

The Bail Reform Act of 1984 provides two avenues through which a defendant may seek reconsideration of the detention order: (1) § 3142(f) and (2) § 3145(b).[1]

---

[1] *United States v. Patterson*, Cr. No. 13-137, 2013 WL 5375438, at *1 (E.D. La. Sept. 24, 2013) (Milazzo, J.); *United States v. Posada Carriles*, 481 F. Supp. 2d 792, 795 (W.D. Tex. 2007).

### A. Re-Opening Detention Under § 3142(f)

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3156, requires pretrial release of a defendant under the least restrictive condition, or combination of conditions, that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. 18 U.S.C. § 3142(c). If, after a hearing pursuant to § 3142(f), the court finds that there is no such condition or combination of conditions of release, the court shall order that the defendant be detained before trial. *Id.* § 3142(e)(1).

> At the detention hearing, the court must consider the available information concerning:
>
> (1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance, firearm, . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.* § 3142(g). When determining whether the defendant's risk of flight warrants detention, the court must find by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance at trial; the court's determination that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community must be supported by clear and convincing evidence. *Id.* § 3142(f)(2).[2]

---

[2] *See United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).

Either the lack of reasonable assurance of the defendant's appearance or the safety of others or the community is sufficient; both are not required.[3]

The court may reopen the matter of detention at any time before trial if the court finds that information exists that: (1) "was not known to the movant at the time of the hearing" and (2) "has a material bearing on the issue [of] whether there are conditions of release that will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community." *Id.* § 3142(f)(2).[4] This standard is two-pronged and requires the movant to present information that is both new and material to the defendant's risk of flight or danger to the community.[5]

Section 3142(f) is "not properly employed as a vehicle for granting a do-over to present evidence that a defendant knew . . . he could have investigated . . . before the detention hearing."[6] It thus precludes a party from a second bite of the detention apple unless there is some demonstrated legitimate reason for not having initially presented the evidence.[7] Courts interpreting "new and material information" for purposes of § 3142(f) require "truly changed circumstances, something unexpected, or a significant event," and courts have interpreted the requirements of this provision strictly.[8]

---

[3] *Fortna*, 769 F.2d at 249 (citing cases).

[4] *See also United States v. Stanford*, 367 F. App'x 507, 510 (5th Cir. 2010) (noting the standard asks "whether any 'new' information was presented" (citing *Hare*, 873 F.2d at 799)); *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989).

[5] *See Stanford*, 367 F. App'x at 510-11 (explaining that the information must be new); *Hare*, 873 F.2d at 799 (explaining that the new information must be material to the issue of risk of flight or dangerousness).

[6] *United States v. Munguia*, Cr. No. 19-191, 2020 WL 1471741, at *4 (N.D. Tex. Mar. 26, 2020) (citation omitted); *see Hare*, 873 F.2d at 799 (finding testimony of family and friends regarding appearance in prior prosecutions was not new evidence).

[7] *See United States v. Flores*, 856 F. Supp. 1400, 1405 (E.D. Cal. 1994); *see also United States v. Bowens*, No. 07-5442, 2007 WL 2220501, at *3 (D. Ariz. July 31, 2007).

[8] *United States v. Morris*, 452 F. Supp. 3d 484, 487 (N.D. Tex. 2020) (Ramirez, M.J.); *United States v. Rodriguez*, No. 20-565, 2022 WL 992739, at *1 (N.D. Tex. Apr. 1, 2022) (Ramirez, M.J.) (quoting *United States v. Jerdine*, No. 08-481, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009) (affirming district court's decision not to reopen detention hearing based on proffered testimony of defendant's family members and a friend, because the proffered information was not new)); *cf. United States v. Rodriguez-Adorno*, 606 F. Supp. 2d 232, 238-239 (D.P.R. 2009).

**1. Whether suppressed evidence may be considered in the detention determination?**

Before addressing whether a suppression ruling is "new" evidence material to danger and flight risk, the Court must first determine whether the suppressed evidence may be considered in connection with the detention decision.

The Bail Reform Act expressly provides that "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information" at a detention hearing. § 3142(f). A judicial officer may, therefore, "rely on matters brought out at the hearing which would not be considered as 'evidence' under traditional trial standards."[9] Further, courts have recognized that a court should have as much information as possible to evaluate properly whether a defendant poses any risk of danger to the community if released. Even though evidence has been suppressed for purposes of trial, that evidence may speak loudly concerning community safety. Therefore, consideration of the suppressed evidence is warranted under the cost-benefit analysis established in *United States v. Leon*, 468 U.S. 897 (1984),[10] particularly when applying the statutory release factors that bear on community safety.[11]

The Court may thus properly consider suppressed evidence in the pretrial detention assessment. Therefore, all of the evidence previously considered at the May 19, 2023, detention hearing continues to inform the detention issue even though some of that evidence may fall within Judge Long's suppression decision.

---

[9] *Fortna*, 769 F.2d at 250.

[10] 468 U.S. at 907.

[11] *United States v. Jay*, 261 F. Supp. 2d 1235, 1240 (D. Oregon 2003) (citing *United States v. McIver*, 186 F.3d 1119 (9th Cir. 1999) (sentencing); *United States v. Kim*, 25 F.3d 1426 (9th Cir. 1994) (sentencing); *United States v. Hebert*, 201 F.3d 1103 (9th Cir. 1999) (revocation)); *see also United States v. Apker*, 964 F.2d 742, 744 (8th Cir. 1992) (affirming district court's conclusion that "magistrate judge erred in disregarding the challenged evidence against [the defendant] before the evidence was found inadmissible by a final order of the court," because "it is appropriate to consider challenged evidence in detention hearings" (citing 18 U.S.C. § 3142(f)); *United States v. Angiulo*, 755 F.2d 969, 974 (1st Cir. 1985) (challenged electronic surveillance information may be considered in detention rulings "at least until a court has decided that the material was not obtained legally" (citing *In Re Globe Newspaper*, 729 F.2d 47, 54 (1st Cir. 1984))).

**2.  Is the suppression ruling "new evidence" "material" to the detention issue?**

The Fifth Circuit has not yet addressed whether a decision to suppress evidence constitutes new, material evidence necessary to re-open detention under § 3142(f).  Numerous district courts have held that a ruling (both granting and denying) a suppression motion satisfies the requirements of new, material evidence necessary to re-open detention under § 3142(f).[12]  Only one appellate court has addressed the precise issue of whether the decision to grant a motion to suppress justifies re-opening detention, and that court held that a decision suppressing evidence is *not* a basis to reopen a detention hearing under § 3142(f).[13]  Like this case, that case involved a defendant's motion to reopen detention based on a decision to suppress some, but not all, of the evidence.  The Sixth Circuit rejected Defendant's argument that the court should consider the § 3142(g) factors in addition to § 3142(f)'s requirement that the new information be material to his appearance in court or the safety of the community to justify re-opening detention.[14]

According to the Bail Reform Act, to re-open detention under § 3142(f), the Defendant need not only have "new evidence," but the new evidence must be of a nature that would increase the likelihood that the defendant will appear at trial and would show that the defendant is less likely to pose a danger to the community.[15]  While the Court agrees that Judge Long's suppression decision is "new," the new evidence does not relate dangerousness which was the primary basis of

---

[12] *See, e.g.*, *United States v. Ausby*, Cr. No. 72-67, 2019 WL 2452988, at *7 (D.D.C. June 11, 2019) (stating that a decision to suppress evidence may impact the weight of the evidence and provide grounds to reopen a pretrial detention proceeding); *United States v. Peralta*, 849 F.2d 625 (D.C. Cir. 1988) (per curiam) (stating that court could reopen prior release decision and detain defendant after intervening decision declining to suppress evidence because the decision not to suppress evidence amounts to "previously nonexistent, material information" that increased the likelihood of conviction just as a court may re-open the detention decision if evidence is excluded because the weight of the government's evidence would substantially decrease).

[13] *See United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. 2012).  The only other appellate court to touch on the issue involved a decision denying a motion to suppress in which the court held justified reopening detention.  *Peralta*, 849 F.2d 625.

[14] *Watson*, 475 F. App'x at 601.

[15] *Id.* at 600.

the detention decision.  Further, this is not a case where all of the evidence has been held to be

inadmissible.

Moreover, this Court's detention order was issued after the original indictment only, not

the new charges added via the superseding indictment.[16]  The suppression decision largely impacts

the later added drug charges, though it also relates to a lesser extent to the original charges.  But

Defendant's presence at the dealership on September 10, 2022 (established by his cell phone GPS

data), alleged conduct at the dealership (supported by Officer Stoltz's conversation with store

employees who watched the video with him), plus Defendant's conduct at the Waffle House, and

the 100+ mph high speed chase throughout the city informed the Court's decision that the

Government had established by clear and convincing evidence that Defendant posed a danger to

the community.  Thus, even if § 3142(g)(2)'s "weight of the evidence" factor is assessed differently

in light of the suppression decision,[17] the suppressed evidence has no impact on the Court's

§ 3142(g)(4) analysis of danger, which continues to weigh heavily in favor of detention.

Accordingly, while Judge Long's January 24, 2025, suppression decision granting in part

and denying in part Defendant's Motion to Suppress qualifies as "new evidence" because same did

not exist as of the May 19, 2023, detention hearing, it does not have a material bearing on the

relevant issue of whether Defendant would pose a danger to the community.  For that reason, the

Motion to Re-Open under § 3142(f) is denied.

---

[16] The Bail Reform Act requires consideration of "the nature and circumstances of the offense charged," including whether the offense involves a firearm, explosive, or destructive device.  § 3142(g)(1).  At the time of the detention hearing, the only charges were arson and possession of the improvised incendiary devices (i.e., three Molotov cocktails).  Those charges alone, setting aside the superseding indictment's drug and gun charges, weigh in favor of detention.

[17] The "weight of the evidence" factor is the least important factor under the Bail Reform Act as same neither requires nor permits a pretrial determination of guilt.  *United States v. Singleton*, Cr. No. 22-264, 2022 WL 17072329, at *3 (W.D. La. Nov. 17, 2022) (citing *United States v. Barnett*, 986 F. Supp. 385 (W.D. La. 1997) (relying on *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985); *United States v. Honeyman*, 470 F.2d 473, 474 (9th Cir. 1972))).

**B. Re-Opening Detention under § 3145(b) When the Length of Detention Becomes Punitive, Rather than Regulatory, in Violation of Due Process**

Although unclear in his initial motion, Defendant appears to also seek to reopen detention by invoking § 3145(b) and raising a due process challenge to his continued pretrial detention based on the length of time in custody.[18]  Section 3145(b) provides:

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

The court's obligation to review pretrial detention to ensure that a defendant's due process rights are not violated by the trial's delay falls within the court's authority under § 3145(b).[19]  Unlike § 3142(f), a motion under § 3145(b) does not require consideration of "new information" before a detention order can be reconsidered or revoked.[20]

Pretrial detention is regulatory when the defendant presents a danger to the community or serious risk of flight.[21]  In *United States v. Hare*, the Fifth Circuit held, "[b]ecause pretrial detention under the [Bail Reform] Act is regulatory, not penal, it does not constitute 'impermissible punishment before trial' that would violate due process."[22]  Although the Due Process Clause thus permits pretrial detention,[23] when pretrial detention is excessively prolonged in relation to

---

[18] *United States v. Parrish*, Cr. No. 19-160, 2021 WL 4046741, at *3 (N.D. Tex.) (holding that defendant may have intended to invoke § 3145(b) to raise a due process challenge to his continued pretrial detention based on the length of time in custody after finding same did not support re-opening under § 3142(f)), *R.&R. adopted*, 2021 WL 4034516 (N.D. Tex. Sept. 3, 2021).
[19] *United States v. Cooper*, Cr. No. 16-60, 2018 WL 1916983, at *5 (N.D. Tex.), *R.&R. adopted*, 2018 WL 1912708 (N.D. Tex. Apr. 23, 2018).
[20] *Posada Carriles*, 481 F. Supp. 2d at 795 (citing *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003)).
[21] *United States v. Salerno*, 481 U.S. 739, 748 (1987).
[22] *Hare*, 873 F.2d at 800 (quoting *Salerno*, 481 U.S. at 746).
[23] *United States v. Stanford*, 394 F. App'x 72, 74 (5th Cir. 2010) (citing *Salerno*, 481 U.S. at 747–48).

Congress's regulatory goal of deterring risk of flight and dangerousness to the community, it becomes punitive in nature and violates due process.[24]

Whether pretrial detention becomes "excessively prolonged" is determined "on a case-by-case basis" considering not only the factors relevant in the initial detention decision (such as the seriousness of the charges, the strength of the government's proof that the defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits), but also additional factors such as the length of the detention that has in fact occurred or may occur in the future, the non-speculative nature of future detention, the complexity of the case, and whether the strategy of one side or the other occasions the delay.[25] The length of pretrial detention is only one factor, and "it alone is not dispositive and carries no fixed weight in a due process analysis."[26]

A § 3145(b) motion must be filed with "the court having original jurisdiction over the offense." 18 U.S.C. § 3145(b). This phrase is interpreted to mean that the motion must be filed before the district judge, not the magistrate judge:[27] "The hierarchy suggested by § 3145(a) is consistent with the ultimate decision-making power and continuing jurisdiction over the actions of magistrate judges that district court judges possess."[28] While a district judge may refer a § 3145(b) motion to a magistrate judge for recommendation,[29] a magistrate judge is otherwise without authority to address a § 3145(b) motion. Thus, to the extent Defendant seeks relief under § 3145(b), that motion must be filed with the district judge in the first instance.

---

[24] *Id.* (quoting *Salerno*, 481 U.S. at 747 n.4).

[25] *Id.* at 74–75 (quoting *Hare*, 873 F.2d at 801).

[26] *United States v. Stanford*, 722 F. Supp. 2d 803, 807-08 (S.D. Tex.) (noting that that "length of detention will rarely by itself offend due process"), *aff'd*, 394 F. App'x 72 (5th Cir. 2010).

[27] *Cisneros*, 328 F.3d at 615 (discussing subsection (a)); *cf. Patterson*, 2013 WL 5375438, at *4 (holding that magistrate judge lacked authority to review detention decision of another magistrate judge under either § 3142(f) or § 3145(b)).

[28] *Cisneros*, 328 F.3d at 616 (citations omitted).

[29] *Parrish*, 2021 WL 4046741, at *4 (citing *Cooper*, 2018 WL 1916983, at *17-19).

Absent referral, Defendant's due process challenge to continued detention falls within § 3145(b) and thus must be resolved by the district judge.  Accordingly, the requested relief pursuant to § 3145(b) is denied without prejudice as same is not available from the undersigned.

### III.  CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendant's Motion to Reopen Detention under § 3142(f) is DENIED;

IT IS FURTHER ORDERED that Defendant's Motion to Reopen Detention under § 3145(b) based on due process is DENIED WITHOUT PREJUDICE as that request must be directed to the district judge.

New Orleans, Louisiana, this _____20th_____ day of May, 2025.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE