UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL ACTION |
| VERSUS | * | NO. 23-87 |
| RICKY WILSON | * | SECTION "O" (2) |

### REPORT AND RECOMMENDATION

Defendant Ricky Wilson's Due Process Motion for Release was referred to the undersigned for a Report and Recommendation in accordance with 28 U.S.C. § 636(b).  ECF Nos. 110, 111.  In accordance with the scheduling order, the parties filed Opposition and Reply Memoranda.  ECF Nos. 112, 116, 120.

Having considered the record, the submissions and arguments of counsel, the evidence presented at the May 19, 2023 and April 9, 2025, hearings, and the applicable law, the undersigned RECOMMENDS that, after *de novo* review, the initial detention decision and the decision denying the § 3142(f) motion to re-open be ADOPTED for the reasons stated herein.  The undersigned FURTHER RECOMMENDS that Defendant's § 3145(b) Due Process Motion for Release be GRANTED and that Defendant be released on bond subject to all necessary conditions to ensure the safety to the community (e.g., home incarceration with GPS monitoring, third party custodian, not possess weapons or narcotics, supervision by pretrial services, and other appropriate conditions) for the reasons stated herein.

## I.    BACKGROUND

These initial charges in this case stem from a September 10, 2022, incident at a car dealership where video evidence reflects a man placing three Molotov cocktails near vehicles and then opening fire on a car dealership building.  On May 5, 2023, the grand jury issued a two-count

1

indictment charging Defendant with arson affecting interstate commerce (i.e., three vehicles: Chevrolet Camaro, BMW Z4, and Porsche Macan) and possession of unregistered firearms (i.e., three improvised incendiary devices known as Molotov cocktails). ECF No. 1. The first count carries with it a mandatory minimum of 5 years and maximum penalty of 20 years, and the second count carries with it a maximum penalty of up to 10 years of imprisonment. ECF No. 15 (recording of detention hearing). Both counts also authorize monetary fines and assessments. *Id.*

### A. **Evidence at the May 19, 2023, Detention Hearing**

At the May 19, 2023, detention hearing on the Government's motion pursuant to 18 U.S.C. § 3142(f)(1)(E), Defendant Wilson was represented by Assistant Federal Defender Annalisa Miron. ECF No. 17. Before the hearing, the Court received a report from Pretrial Services recommending detention. ECF No. 14.

The Pretrial Services Report ("PSR") reflects that Defendant attended Indiana State University and obtained a Bachelor of Arts in law administration in 2015, and he is two semesters shy of a Master's Degree in adult school supervision. *Id.* at 1. The PSR also reflects that Defendant has no prior convictions. Although Defendant has no prior convictions, he had (1) pending charges for use of a firearm during a crime of violence and possession with intent to distribute relating to a November 9, 2022, arrest; (2) an active warrant for aggravated assault after an April 29, 2023, incident where he was alleged to have brandished a firearm at a Waffle House patron after being asked to lower the volume of his music; and (3) warrants for illegal possession of a firearm, possession of marijuana, and aggravated obstruction. *Id.* at 3.

At the hearing, the Government called the case agent-in-charge of the investigation, Officer Robert Stoltz, to testify and introduced Exhibit Nos. 1, 3-8, 10-12, and 14. ECF Nos. 17, 98. Officer Stoltz testified that the arson incident occurred on September 10, 2022, at approximately

1:00 a.m. at a Westbank Expressway used car lot.  Evidently, Defendant purchased a Mercedes from that car lot in June 2022, and three days before the September 10, 2022, incident, he had contacted the used car lot owner about needed repairs.  The owners indicated they would repair the car but Defendant would have to wait while it was being fixed.  Defendant requested a loaner car, after which the conversation grew heated.  When the owner told Defendant to take his warranty and have his car repaired elsewhere, Defendant allegedly responded with threats along the lines of "I'll be back" or "You'll see what I can do."

Video evidence from the car dealership reflects a man placing three improvised devices near cars, lighting them on fire, and then opening fire toward the dealership building.  Officer Stoltz reviewed the September 10, 2022, video coverage with employees of the dealership, and they identified Defendant as the perpetrator.  In the course of investigating the crime, Officer Stoltz obtained telephone GPS information that reflected that one of Defendant's phones was at the car lot on the night of the incident.  Evidence introduced at the hearing also included an Instagram photograph of Defendant with a Glock and attached extended magazine visible in his right pocket (Exhibit 14, ECF No. 98-4) as well as photographs of a weapon found at his home (Exhibits 11, 12, ECF Nos. 98-2, 98-3).  Ballistics tests confirmed that a firearm seized matched the firearm used at the auto dealership on September 10, 2022, and testing confirmed the weapon contained Defendant's DNA.

Officer Stoltz also testified, based on a police report and a victim interview, while at Waffle House in the early morning of Saturday, April 29, 2023, Defendant allegedly took a firearm, equipped with a drum magazine, out of his bag and placed it on the counter to threaten a customer who had complained about Defendant's loud music.  The Government introduced the video from the Waffle House incident.  Ex. 8.  Officer Stoltz indicated the firearm from Defendant's Instagram

video (Ex. 3) appeared to be the same weapon.

On May 15, 2023, Officer Stoltz attempted to arrest Defendant by stopping him while driving his vehicle, but Defendant fled. A chase ensued down Deckbar Avenue, onto Earhart Boulevard, past South Carrollton Avenue and through various New Orleans neighborhoods until Officer Stoltz ended the chase as it became too dangerous. Officer Stoltz testified that the chase speeds exceeded 100 mph, and Defendant ran multiple red lights. Ex. 5, 6. After ending the chase, Officer Stoltz returned to the residence to execute a search warrant. While executing the warrant, Defendant telephoned his girlfriend at the residence. She handed the phone to Officer Stoltz's supervisor who indicated that Defendant would turn himself in, which he did at 6:00 p.m. after making an Instagram post. Exhibit 1. The Government introduced excerpts from custodial videos reflecting Defendant's anger and agitation over his girlfriend being held in custody. Ex. 4.

Defendant did not call any witnesses or present any evidence at the hearing. ECF No. 17.

In closing arguments, the Government argued that Defendant's default position was violence, which was escalating with increased violence and aggression in the preceding 6 months, pointing to the attack on the dealership and the Waffle House incident. In addition, the Government cited to Defendant's flight efforts during which he drove at over 100 mph throughout various neighborhoods in the middle of the day.

Considering the nature and circumstances of the charged offenses (use of incendiary devices and shooting the building with an extended magazine weapon), the weight of the evidence (including the ballistics match and GPS evidence establishing Defendant's presence at the auto dealership), the Waffle House incident, the recommendation of pretrial services, and Defendant's flight in excess of 100 mph through city neighborhoods in the middle of the day, the undersigned issued an Order of Detention. ECF No. 19. At the conclusion of the hearing, the Court noted that

it did not see, and no one (including Defendant) pointed to, any conditions or combination of conditions that were available to reasonably assure the safety of the community.

**B.  The Superseding Indictment**

On July 28, 2023, the Grand Jury issued a superseding indictment charging Defendant with five additional counts.  ECF No. 23.  Counts 3 and 5 charge Defendant with possession with intent to distribute marijuana on November 9, 2022, and May 15, 2023, respectively.  *Id.* at 2-3.  Counts 4 and 6 charge Defendant with possession of a firearm in furtherance of a drug trafficking crime in connection with the crimes alleged in Counts 3 and 5, and Count 7 charges Defendant with one count of possession of a firearm with an obliterated serial number.  *Id.*

These new charges were all added after the May 19, 2023, detention hearing addressing the alleged arson on September 10, 2022.  Thus, neither these new charges nor the circumstances surrounding them factored into the original detention decision.

**C.  The  Motion to Suppress**

On February 11, 2025, Judge Long granted in part and denied in part Defendant's Motion to Suppress.  Judge Long excluded certain evidence seized from Defendant's vehicle pursuant to a search warrant executed on November 9, 2022, and the property at 212 Central Avenue pursuant to a May 15, 2023, search warrant.  ECF No. 90 at 4-13, 21-31.  Judge Long denied the motion as to the DNA obtained pursuant to a November 3, 2022, buccal swab warrant and Defendant's custodial interview.  *Id.* at 13-21, 32-39.  With regard to the video interview, Judge Long suppressed statements and dialogue before time stamp 28:25 but not statements after 28:25.  *Id.* at 39-46.  In light of that ruling, Judge Long dismissed Count 7 (possession of a firearm with an obliterated serial number) of the Superseding Indictment.  *Id.* at 46; *see also* ECF No. 87.

### D.  <u>The Motion to Reconsider Detention</u>

After Judge Long's suppression ruling, Defendant filed a motion to reopen detention, which the Government opposed.  ECF Nos. 93, 100, 103, 105.  The undersigned held a hearing on April 9, 2025.  ECF No. 102.  Although Defendant cited only 18 U.S.C. § 3142(f) in support of the motion to re-open (ECF No. 93 ¶ 3), it became clear during briefing and argument that Defendant also sought to rely upon 18 U.S.C. § 3145(b) to support his request for release.  By Order and Reasons dated May 20, 2025, I denied the § 3142(f) motion on the basis that the new information (i.e., Judge Long's ruling) did not have a material bearing on issue of Defendant's danger to the community.  ECF No. 108.  I then denied without prejudice the § 3145(b) motion as that motion must be filed with the district judge.  *Id.*  In accordance my decision, Defendant filed this Due Process Motion for Release, which Judge Long has referred for Report and Recommendation.  ECF Nos. 110, 111.

Defendant seeks release based on due process grounds and alternatively for appellate review of the initial detention decision and decision denying the § 3142(f) motion to re-open.  ECF No. 110-1 at 1-2.  Defendant argues that his lengthy detention has crossed the line from regulatory to punitive.  *Id.* at 3-4.  In addition to again addressing the § 3142(g) factors and arguing that the suppression decision significantly alters the weight of the evidence factor, Defendant argues that he has been incarcerated for over two years, there is no scheduled trial date and thus his continued future detention is indeterminable, the case is not complex, and while some delay was attributable to him or both sides, the major delay results from the Government's strategic decisions to add additional charges via a superseding indictment, its decision not to seek expedited appeal of Judge Long's suppression decision relating to the additional charges, and its objection to severance of the initial two charges from the new charges added via the superseding indictment that are most impacted by the suppression decision.  *Id.* at 4-11.

In Opposition, the Government argues that, conducting the case-by-case assessment of Defendant's due process challenge to pretrial detention, his detention has not crossed from regulatory to punitive. ECF No. 116. The Government notes that the length of detention is only one factor and is not dispositive, citing numerous cases involving lengthier pretrial detentions. *Id.* at 3-5. Although the Government concedes that Defendant's future detention is speculative, it argues that it will be less speculative once the appeal process has concluded and is confident that the district judge will expeditiously resolve the case. *Id.* at 5-6. The Government also argues that the case is complex because it involves three separate but related incidents with discovery requests and motion hearings, and that the delays are attributable to Defendant, not the Government, which has already certified that the interlocutory appeal was not filed for purposes of delay. *Id.* at 6-8.

In Reply, Defendant focuses on only two relevant factors: length of delay and responsibility for delay. ECF No. 120. Defendant notes that many of the cases cited by the Government involved periods of detention shorter than that already experienced by him. *Id.* at 2. And while in other cases, the length of the delay was problematic but other factors overrode those concerns (e.g., significant criminal histories, imminent trial date, complexity of case, and delays were not attributable to the government). *Id.* at 2-5. Defendant concedes that certain delays were attributable to him or both parties, but he objects to any effort to blame him for delays attributable to the Government's need to investigate the new counts added through the superseding indictment involving two different events on different dates because the Government made the decision to proceed with those charges through a superseding indictment rather than a separate indictment. *Id.* at 5. He also objects to being assessed with any delay attributable to the successful motions to suppress or its appeal, particularly since the Government objected to severance of the initial arson counts from those added by Superseding Indictment and impacted by the suppression ruling. *Id.*

Defendant argues that the most relevant period of delay is that following the January 25, 2025, suppression decision, citing the Government's 3-week delay in filing the notice of appeal, declining to seek expedited appeal, waiting until the last day of the transcript deadline to advise the Fifth Circuit that no transcript was necessary, using the entire briefing period and obtaining an extension, and opposing Defendant's motion to sever. *Id.* at 5-6. Defendant argues that, even though the appeal was not "taken for purposes of delay," the Government's strategic decisions not to seek expedited review of its interlocutory appeal and refusal to sever Counts 1 and 2 from Counts 3 through 7 resulted in delays attributable to the Government. *Id.* at 5-8.

## II.    APPLICABLE LAW AND ANALYSIS

The Bail Reform Act of 1984 provides two avenues through which a defendant may seek reconsideration of the detention order: (1) § 3142(f) and (2) § 3145(b).[1]

### A.    Detention and Denial of Motion to Re-Open under § 3142(f)

Detention matters are referred to Magistrate Judges under 28 U.S.C. § 636(a) and EDLA Local Rule 5.2(3). Defendant's motion is unclear as to whether he seeks review of the undersigned's initial May 19, 2023, detention decision (ECF No. 19) or only the undersigned's May 20, 2025, decision denying his motion to re-open (ECF No. 108). Such requested review, however, may not be timely.

Some courts have applied Rule 59(a)'s 14-day objection period to non-dispositive detention orders.[2] However, the Tenth Circuit has held that Rule 59(a)'s 14-day limitation does not apply to a § 3145(b) motion nor does it apply to a magistrate judge's § 3142 detention decision because that

---

[1] *United States v. Patterson*, Cr. No. 13-137, 2013 WL 5375438, at *1 (E.D. La. Sept. 24, 2013) (Milazzo, J.); *United States v. Posada Carriles*, 481 F. Supp. 2d 792, 795 (W.D. Tex. 2007).

[2] *See, e.g.*, *United States v. Pineda-Diaz*, Cr. No. 20-004, 2020 WL 2747421, at *1 (N.D. Tex. May 26, 2020) (citation omitted) (holding that a defendant must seek review of a magistrate judge's detention order within 14 days pursuant to FED. R. CRIM. P. 59(a)).

decision derives from 28 U.S.C. § 636(a)'s statutory grant of powers, not a district judge's referral under § 636(b).[3]  Regardless, as the Fifth Circuit has not addressed this issue and a district judge retains the authority to review any magistrate judge's decision whether or not objections are timely filed,[4] a *de novo* review of the initial detention decision and the decision denying the motion to re-open is not prohibited.

De novo review requires the district judge to make an independent determination, but it does not require that the district judge conduct a new evidentiary hearing.[5]  Rather, the district judge satisfies *de novo* review by examining the pleadings and the evidence developed before the magistrate judge and then adopting the magistrate judge's decision.[6]  The district judge may refer a § 3145(b) motion to review to a magistrate judge for report and recommendation.[7]

### 1.  The Initial May 19, 2023, Detention Decision

In accordance with § 3142(e), the undersigned held a hearing to determine whether detention was required or whether there were any conditions or combination of conditions that could be imposed to reasonably assure Defendant's appearance at trial and the safety of the community.  At that hearing, the Government presented evidence and the testimony of the investigating officer.  ECF No. 17.  Defendant did not call any witnesses.  *Id.*  The Court also

---

[3] *See United States v. Doby*, 928 F.3d 1199, 1205-06 (10th Cir. 2019).  One court has rejected the Tenth Circuit's rationale when a Local Rule addresses the review period.  *United States v. Harrod*, Cr. No. 21-5253, 2022 WL 168172, at *2 (W.D. Wash. Jan. 18, 2022).

[4] FED. R. CRIM. P. 59 advisory committee's note to 2005 amendment (citing *Thomas v. Arn*, 474 U.S. 140, 154 (1985)).

[5] *United States v. Rueben*, 974 F.2d 580, 585–86 (5th Cir. 1992) ("When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." (citing *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1992)).

[6] *United States v. Jordan*, No. 24-60167, 2024 WL 2874559, at *1 (5th Cir. June 7, 2024) (quoting *United States v. Hensler*, No. 94-50042, 1994 WL 83436, at *2 (5th Cir. Feb. 24, 1994) (unpublished but precedential under 5th Cir. R. 47.5.3)).

[7] *United States v. Parrish*, Cr. No. 19-160, 2021 WL 4046741, at *4 (N.D. Tex. March 26, 2021) (citing *United States v. Cooper*, Cr. No. 16-60, 2018 WL 1916983, at *17-19 (N.D. Tex. Apr. 2, 2018)), *R.&R. adopted*, 2021 WL 4034516 (N.D. Tex. Sept. 3, 2021); *United States v. Bethany*, Cr. No. 18-297, 2020 WL 6731016, at *2 (N.D. Tex. Oct. 16, 2020), *R.&R. adopted*, 2020 WL 6712236 (N.D. Tex. Nov. 13, 2020).

considered the pretrial services report recommending detention and noting inconsistent information from Defendant and his mother regarding his residency and employment.  ECF No. 14.

Considering the evidence and § 3142(g) factors, the undersigned determined that there were no conditions or combination of conditions available and ordered detention.  While some of the § 3142(g) factors weighed in favor of release (i.e., lack of criminal history, education relevant under subpart (3)), other factors (particularly subparts (1), (2) and (4)) weighed in favor of detention. Specifically, the nature and circumstances of the crimes charged involved arson/use of an explosive devices and a firearm, the weight of the evidence was strong (e.g., cell phone GPS data showing presence at the car dealership, video evidence with employees identifying Defendant as the perpetrator, ballistic match of car dealership bullets to Defendant's weapon), and the nature and seriousness of danger posed to the community (the alleged conduct at the car dealership, the 100+ mph high speed chase throughout metro New Orleans, and alleged conduct at Waffle House) sufficed to establish, by clear and convincing evidence, that Defendant posed a danger to the community.

A review of the pleadings and recording of the May 2023 detention hearing supports the detention order, and while Defendant relies heavily on the "weight of the evidence" factor, that is the least important factor under the Bail  Reform Act as same neither requires nor permits a pretrial determination of guilt.[8]  Nothing in Defendant's current motion demonstrates that the original detention decision was erroneous or should not be adopted by the district judge.

### 2.  Denial of the § 3142(f) Motion to Re-Open

The standard governing Defendant's request to re-open detention under § 3142(f) is fully

---

[8] *United States v. Singleton*, Cr. No. 22-264, 2022 WL 17072329, at *3 (W.D. La. Nov. 17, 2022) (citing *United States v. Barnett*, 986 F. Supp. 385 (W.D. La. 1997) (relying on *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985)*; United States v. Honeyman*, 470 F.2d 473, 474 (9th Cir. 1972))).

addressed in this Court's May 20, 2025, Order and will not be repeated herein.  ECF No. 108.  In short, Defendant failed to demonstrate the existence of information that (1) was not known to the movant at the time of the hearing *and* (2) has a material bearing on the issue of whether there are conditions of release that would reasonably assure the appearance of the defendant and the safety of any other person and the community.[9]

Judge Long's decision suppressing evidence is "new" information, but that information did not have a material bearing on the relevant issue of dangerousness.  While Judge Long's suppression decision impacted the weight of the evidence as to Counts 3 through 7, the May 2023 detention decision was reached based on the original indictment containing only Counts 1 and 2, neither of which is significantly implicated by the suppression ruling (other than possibly the ballistics match).  Even if § 3142(f) did not expressly make clear that the Federal Rules of Evidence do not apply to detention hearings and the case law did not establish that suppressed evidence may be considered in reaching a detention decision, the remaining evidence (e.g., GPS location, video identification, 100+ mph high speed chase) fully supports the detention decision.

A review of the pleadings, the evidence, the recording of the May 2023 detention hearing, and the recording of the April 2025 hearing on the motion to re-open all support the denial of the motion to re-open under § 3142(f), and that decision should be likewise adopted.

**B.  Re-Opening Detention under § 3145(b) based on Due Process**

Section 3145(b) does not provide a time limitation on when a person ordered detained on a pretrial basis may file a motion for revocation or amendment of that order.  It provides:

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over

---

[9] *See United States v. Stanford*, 367 F. App'x 507, 510-11 (5th Cir. 2010) (noting the standard asks "whether any 'new' information was presented" (quoting *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989))); *Hare*, 873 F.2d at 799 (explaining that the new information must be material to the issue of risk of flight or dangerousness).

the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.[10]

Courts have held that § 3145(b) may be used to raise a due process challenge to continued pretrial detention based on the length of time in custody.[11]  Unlike § 3142(f), a motion under § 3145(b) does not require consideration of only "new information."[12]  Rather, the Court may consider any evidence, even evidence available and not offered at the initial detention hearing, in addressing a § 3145(b) motion.  In addition, in assessing the risk of flight and dangerousness, the Defendant may offer conditions for release, such as daily reporting to an appropriate government official.[13]

Defendant begins his argument by citing to the presumption of innocence.  ECF No. 110-1 at 2.  The presumption of innocence is relevant under the Bail Reform Act because a court cannot detain a defendant because of any belief as to guilt or as a form of pre-conviction punishment.[14] Merely detaining a defendant pre-trial, however, does not automatically constitute punishment.[15] Rather, the court must look to legislative intent to determine whether a restriction on liberty constitutes impermissible punishment or permissible regulation.[16]  Unless Congress expressly intended to impose punitive restrictions, the punitive/regulatory distinction turns on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."[17]  Thus, a

---

[10] 18 U.S.C. § 3145(b).

[11] *Parrish*, 2021 WL 4046741, at *3 (holding that defendant may have intended to invoke § 3145(b) to raise a due process challenge to his continued pretrial detention based on the length of time in custody after finding same did not support re-opening under § 3142(f)); *see also Cooper*, 2018 WL 1916983, at *5 (court's obligation to review pretrial detention to ensure that a defendant's due process rights are not violated by the trial's delay falls within the court's authority under § 3145(b)).

[12] *Posada Carriles*, 481 F. Supp. 2d at 795 (citing *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003)).

[13] *Hare*, 873 F.2d at 801.

[14] *See Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979); 18 U.S.C. § 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence.").  Although a defendant is entitled to credit toward their term of imprisonment for time spent in official detention prior to sentencing (18 U.S.C. § 3585(b)(1)), the Government's desire to see a defendant start serving his sentence is not a proper basis for a detention decision.

[15] *See Bell*, 441 U.S. at 537.

[16] *Schall v. Martin*, 467 U.S. 253, 269 (1984).

[17] *Id.* (brackets in original)(quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–169 (1963)).

defendant charged with a federal crime and eligible for detention under the Bail Reform Act cannot, without more, invoke the presumption of innocence to avoid detention.

In *United States v. Salerno*, the Supreme Court upheld the constitutionality of the Bail Reform Act's pretrial detention on the basis of future dangerousness, finding it constituted a permissible regulation rather than impermissible punishment before trial: "Congress did not formulate the pretrial detention provisions as punishment for dangerous individuals. Congress instead perceived pretrial detention as a potential solution to a pressing societal problem. There is no doubt that preventing danger to the community is a legitimate regulatory goal."[18]  The Court reasoned that pretrial detention was not excessive in relation to Congress's goal because the Bail Reform Act limits the circumstances in which detention may be sought to certain crimes, the arrestee is entitled to a prompt detention hearing, and "the maximum length of pretrial detention is limited by the stringent time limitations of the Speedy Trial Act."[19]  Of course, the Speedy Trial Act does not always prevent prolonged pretrial detention because many time periods may be excluded from the 90-day custody limit.[20]  Although extended pretrial detention may run afoul of due process even when the Speedy Trial Act has not expired,[21] the Court in *Salerno* expressed "no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal."[22]

The Fifth Circuit reiterated the Supreme Court's *Salerno* holding and addressed the issue of when regulatory detention becomes punitive in *United States v. Hare.*[23]  Whether pretrial detention has become "excessively prolonged" is determined "on a case-by-case basis" considering

---

[18] 481 U.S. 739, 747 (1987) (citations omitted).
[19] *Id.* at 747-48.
[20] *United States v. Mendenhall*, Cr. No. 23-20651, 2024 WL 5199344, at *4 (E.D. Mich. Dec. 3, 2024).
[21] *Id.* (citing *United States v. Bowers*, 2024 WL 4149845, at *2 (D. Md. Sept. 10, 2024)).
[22] *Salerno*, 481 U.S. at 747 n.4.
[23] *Hare*, 873 F.2d at 800 ("Because pretrial detention under the [Bail Reform] Act is regulatory, not penal, it does not constitute 'impermissible punishment before trial' that would violate due process." (quoting *Salerno*, 481 U.S. at 746)).

not only factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that the defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits, but also additional factors such as the length of the detention that has in fact occurred or may occur in the future, the non-speculative nature of future detention, the complexity of the case, and whether the strategy of one side or the other occasions the delay.[24]

Later, in *United States v. Stanford*, the Fifth Circuit reiterated that, while the Fifth Amendment's Due Process Clause permits pretrial detention, when pretrial detention is excessively prolonged in relation to Congress' regulatory goal of deterring flight risk and dangerousness to the community, it becomes punitive in nature and violates due process.[25]  Although not mentioned by the Fifth Circuit, some courts have considered a defendant's sentencing guideline range in evaluating the constitutionality of a lengthy pretrial detention,[26] reasoning that the closer the period of pretrial detention gets to the likely term of imprisonment after trial, the more a regulatory detention effectively becomes a punitive sentence.[27]

Defendant's current motion presents no new evidence that alters the evaluation or weighing of the evidence related to the § 3142(g) factors considered in relation to the initial detention decision and the later denial of § 3142(f) motion to re-open.  Those factors discussed in my prior Order and Reasons are incorporated herein by reference.  ECF No. 108 at 8-12.[28]  The undersigned therefore

---

[24] *Hare*, 873 F.3d at 800-01; *see also United States v. Stanford*, 394 F. App'x 72, 74–75 (5th Cir. 2010) (quoting *Hare*, 873 F.2d at 801).

[25] 394 F. App'x at 74 (citing *Salerno*, 481 U.S. at 747–48, 747 n.4).

[26] *See, e.g.*, *United States v. Bikundi*, 926 F.3d 761, 780 (D.C. Cir. 2019) (concluding that 18-month delay for complex conspiracy charges carrying potential sentences of 84 and 120 months was "justifiable"); *United States v. Shareef*, 907 F. Supp. 1481, 1484–85 (D. Kan. 1995) (finding due process issue based on various factors for a 9-month detention in case with guideline sentencing range of 18 to 24 months); *see also United States v. Hensley*, Cr. No. 18-270, 2024 WL 3673612, at *6-7 (D.D.C. Aug. 5, 2024) (finding disproportionate 15-month pretrial detention relative to potential guideline range of 0 to 6 months with the maximum potential sentence of 18 months).

[27] *Mendenhall*, 2024 WL 5199344, at *4.  Neither the Government nor Defendant have provided any guideline range calculations in this case, but the Government did make clear at the initial detention hearing that Defendant faced a mandatory minimum of 5 years and maximum of 20 years on Count 1 and a maximum penalty of up to 10 years on Count 2.

[28] The court need not re-hash factors previously considered.  *See United States v. Stanford*, 722 F. Supp. 2d 803, 807 (S.D. Tex.), *aff'd*, 394 F. App'x at 75 (5th Cir. 2010).

proceeds to assess the remaining *Hare* factors: (1) length of the detention that has occurred or may

occur in the future; (2) the non-speculative nature of future detention: (3) the complexity of the

case; and (4) whether the strategy of one side or the other occasions the delay.

### 1. Length of Detention and Future Detention

In rejecting a defendant's due process challenge to his 12-month (and anticipated 18-month)

detention period in *Stanford*, the Fifth Circuit noted that courts have routinely upheld longer pretrial

detention periods, citing cases rejecting due process challenges to pretrial detentions of 30 to 33

months.[29] Other circuits have similarly rejected due process to challenges to greater lengths of

detention, up to 41 months.[30] And judges in district courts in Louisiana have rejected due process

challenges to pretrial detentions of similar period including one of 36 months.[31]

Some courts, however, have found due process violations from prolonged detention

requiring release and indicated that any pretrial detention over two years requires special

circumstances and that continued detention is justified only where the government is not responsible

for any significant portion of the delay.[32] The Fifth Circuit appeared to agree with that time frame

---

[29] 394 F. App'x at 75 (citing *United States v. El–Hage*, 213 F.3d 74, 77–79 (2d Cir. 2000) (30-33 months); *United States v. Millan*, 4 F.3d 1038, 1044 (2d Cir.1993) (30 months)).

[30] *See, e.g.*, *United States v. El–Gabrowny*, 35 F.3d 63, 65 (2d Cir. 1994) (27 months); *United States v. Casas*, 425 F.3d 23, 34 (1st Cir. 2005) (41 months); *United States v. Tawfik*, 852 F. App'x 965, 966 (6th Cir. 2021) (5-year detention).

[31] *United States v. Warren*, Cr. No. 10-154, 2013 WL 1907459, at *2 (E.D. La. May 8, 2013) (rejecting due process challenge based on 36 months of pretrial detention), *aff'd*, 533 F. App'x 487 (5th Cir. 2013); *see also United States v. Buswell*, Cr. No. 11-198, 2013 WL 210899, at *8 (W.D. La. Jan. 18, 2013) (finding no due process issue with 22-month pretrial detention).

[32] *See, e.g.*, *United States v. Ostolaza-Robles*, Cr. No. 13-771, 2022 WL 473037, at *5 (D.P.R. Feb. 15, 2022) (8 years); *United States v. Ojeda Rios*, 846 F.2d 167, 169 (2d Cir. 1988) (32 months of pretrial incarceration violated the Due Process Clause); *see also United States v. Rush*, Cr. No. 14-88, 2017 WL 6541436, at *4 (E.D. Mo. Dec. 1, 2017) (noting that, where pretrial detention exceeds two years, "continued detention is justified only where the government is not responsible for any significant portion of the delay and special circumstances indicate that the defendant's release would pose an extraordinary threat to the legitimate regulatory goals requiring pretrial detention"), *R.&R. adopted*, 2017 WL 6550680 (E.D. Mo. Dec. 21, 2017); *United States v. Hofstetter*, Cr. No. 15-27, 2017 WL 4079181, at *6 (E.D. Tenn. Sept. 14, 2017) ("Courts have held that periods of detention exceeding two years did not violate due process, when the case was complex. . . . In cases in which the length of pretrial detention exceeds two years, courts have typically upheld detention only if the government was not responsible for any significant portion of the delay and special circumstances indicated that the defendant's release would pose an extraordinary threat to the government's regulatory interests in detention." (internal quotation marks and citation omitted)).

in *United States v. Faulkner* when it stated that pretrial detention in excess of 18 months weighed in favor of a due process violation, particularly when coupled with other factors such as an uncertain length of future detention.[33]

But the length of pretrial detention is only one factor that must be considered, and "it alone is not dispositive and carries no fixed weight in a due process analysis."[34]  And the length of detention cannot be viewed in isolation from the other relevant *Hare* factors.[35]  Thus, in *Faulkner,* although the Fifth Circuit found 18 months to be problematic, it ultimately affirmed the decision to continue detention in light of the complexity of the case and the fact that the delay was not the Government's fault.[36]  Likewise, in *United States v. El-Hage*, the Second Circuit approved of a 30-33 month pretrial detention for a defendant charged with being a key participant in al Qaeda,[37] emphasizing that the extraordinary length of detention was justified only by the unprecedented scope of violence that the alleged conspiracy inflicted, the extraordinary complexity of the case and difficult trial preparation, and the delay was not attributable to the government.[38]

While 24+-months of pretrial detention is certainly "deeply troubling,"[39] it is not in itself violative of due process.

### 2. Non-Speculative Nature of Future Detention

One factor often considered decisive in cases involving lengthy pretrial detention is a relatively short, imminent trial date limiting the anticipated length of any future detention.  For

---

[33] 801 F. App'x 322, 323 (5th Cir. 2020) (noting that 18 months weighed in favor of a due process violation, but that factor alone was not dispositive).

[34] *Stanford*, 722 F. Supp. 2d at 807-08 (citations omitted) (noting that 12-month detention and anticipated 19-months through trial did not offend due process "[a]bsent any prosecutorial delay or extended speculative detention").

[35] *Id.* at 809 ("Absent any prosecutorial delay or extended speculative detention, which the Court discusses below, the length of Stanford's pretrial detention to this point does not offend due process.").

[36] 801 F. App'x 322.

[37] 213 F.3d at 77.

[38] *Id.* at 76–77.

[39] *United States v. Torres*, 995 F.3d 695, 709 (9th Cir. 2021) (noting concern regarding 21 months of pretrial detention).

instance, in *United States v. Torres*, the Ninth Circuit found 21 months of pretrial detention "deeply troubling" but not a due process violation, expressly noting that the length of detention was approaching the limits of what due process could tolerate.[40]  In ruling, the court specifically advised that, if the Defendant was not tried on his current trial date (scheduled for one month later), the district court and prosecution must consider whether further detention crossed the line from regulatory to punitive.[41]

Similarly, in *United States v. Briggs*, the Second Circuit was also "deeply troubled" by a 16-month pretrial detention.[42]   The Court likewise rejected the due process challenge, noting:

> [O]ur repeated statements that length of detention alone is not dispositive must not be read to authorize detentions of any length simply because the other relevant factors weigh against the defendant. There is no bright-line limit on the length of detention that applies in all circumstances; but for every set of circumstances, due process does impose some limit. Although we affirm the district judge's ruling that the other relevant factors weigh sufficiently strongly against [the defendant] to justify his ongoing detention at this point, we find that the length of his detention is approaching the limits of what due process can tolerate.
>
> . . . Our decision to uphold the district court's ruling, however, is a close call. Because of the length of [defendant's] detention, due process demands that the district court begin [his] trial, or set reasonable bail, very soon. Accordingly, while we AFFIRM the district court's holding . . . , we do so without prejudice to [defendant's] moving this court to recall the mandate and reinstate his appeal if the district court does not begin his trial, or set reasonable bail for him, [within 4 months].[43]

And in *United States v. Hill*, the Second Circuit rejected a due process challenge to a 24-month detention, noting:

> Although the length of his detention certainly requires convincing justification for its continuance, that justification is found in the inherent complexities of this large multi-defendant case, which presents defense counsel with voluminous discovery to absorb and the court with myriad motions to address. Moreover, the record reflects no intentional, unwarranted delay by the prosecution . . . .

---

[40] 995 F.3d at 709.
[41] *Id.* at 710.
[42] 697 F.3d 98, 103 (2d Cir. 2012), *as amended*, (Oct. 9, 2012).
[43] *Id.* at 103-04.

> For such continued pretrial detention not to offend due process, however, trial must be afforded [to the defendant] within a reasonable time. It appears that the district court has neither ruled on [defendant's] motion to sever his charges from those of his co-defendants, nor set a trial date. Therefore, in affirming [defendant's] detention order, we do so without prejudice to [his] moving this court to recall the mandate and reinstate his appeal if the district court does not begin [his] trial or release him on bail [within 4 months].[44]

The absence of a trial date renders Defendant's continued future detention entirely speculative. And Defendant argues that, even if the Fifth Circuit reverses Judge Long's suppression ruling, he raised other bases for exclusion that would still need to be addressed, thus resulting in even more delay. ECF No. 103 at 2 n.1. Thus, the "non-speculative nature of future detention" factor does not support a finding that continued detention comports with due process. Rather, it weighs in favor of finding that this 24-month detention, with no end in sight, crosses the line from regulatory to punitive, in violation of due process.

### 3. Complexity of the Case

This factor takes into account the relationship between a case's complexity and the time required to prepare for trial.[45] In assessing complexity, the Fifth Circuit looks to the considerations articulated in the Speedy Trial Act (e.g., number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law).[46] "When the complexity of a case is a reason for the length of the detention, the detention continues to be regulatory in nature rather than penal."[47] However, the difficulties created by large and complex cases do not justify the indefinite detention of the defendants:

> The realities of limited resources and the interests of efficiency may lead us to uphold exercises of prosecutorial discretion, but they do not suffice to excuse failures of prosecutorial diligence. When the government decides to prosecute a

---

[44] 462 F. App'x 125, 127-28 (2d Cir. 2012) (summary order).

[45] *Warren*, 2013 WL 1907459, at *2.

[46] *Hare,* 873 F.2d at 800-01 (quoting 18 U.S.C. § 3161(h)(8)(B)(ii)).

[47] *Stanford*, 722 F. Supp. 2d at 810 (citing *Hare*, 873 F.2d at 801).

case of considerable complexity and scope, it must still pursue that case with promptness and energy. Due process does not slumber because cases are complex.[48]

In this case, the Government's entire argument as to complexity is set forth in two sentences: "This case is complex as it has involved among other things, three separate but related incidents, several search warrants, custodial statements by the Defendant, DNA testing, and ballistic testing. It has also involved defense discovery requests as well as a motions hearing." ECF No. 116 at 6. Contrary to the Government's assertion, however, this case does not present the type of complexity noted by courts in justifying lengthy pretrial detentions.[49]

This is a single defendant case. It does not involve voluminous documentary discovery nor does it involve hundreds of transactions that require analysis in relation to an extensive conspiracy or complicated investment fraud scheme. Further, it does not present any novel questions of law or fact. Rather, this case is a run-of-the-mill criminal prosecution against one defendant alleging property damage through arson, sale of marijuana and possession of weapons in connection with the sale of marijuana. This case is not properly characterized as unique or complex in any manner. Moreover, to the extent the original two-count case has become more complicated by the addition of the five counts involving two alleged drug sales on different occasions and associated weapons, the decision to join those counts to the arson counts rests with the Government.

In this case, the "complexity" factor does not support continued lengthy pretrial detention.

---

[48] *Briggs*, 697 F.3d at 103.

[49] *E.g.*, *Stanford*, 394 F. App'x at 75 (noting Defendant concedes complexity as the conspiracy and mail, wire, and securities fraud case involved an "enormous volume of discovery documents and a staggering numbers of transactions"); *United States v. Faulkner*, Cr. 18-500, 2020 WL 374543, at *8 (N.D. Tex. Jan. 23, 2020) (finding case complex because of the guilty plea withdrawal, 21-count indictment, allegations of a 7-year fraudulent scheme involving $150 million in investor funds, and representation that discovery involved over 86 terabytes of data), *aff'd*, 801 F. App'x 322 (5th Cir. 2020); *El-Hage*, 213 F.3d at79-80 (conspiracy case involving extensive discovery); *El-Gabrowny*, 35 F.3d at 65 (finding case complex due to "extensive evidence, including numerous tapes in Arabic").

### 4. Whether the Delay is Attributable to the Government

The question of delay is not focused on whether the court is responsible for delay; rather, the issue is whether any action of the Government deprived the defendant of his constitutional rights.[50] Delays caused by the court or the defendant thus do not raise due process concerns.[51] But any delay attributable to the Government or occasioned by prosecutorial strategy may be a basis upon which an exceedingly lengthy pretrial detention offends due process.[52]

This factor does not require dilatory conduct intended to cause delay or bad faith on the Government's behalf.[53] Rather, even if the Government is not "at fault" for causing delay, it is responsible for the delay when the delay results from its actions and choices.[54] "Matters of who to prosecute and for what charges and at what point in the investigation are all within the prosecutor's discretion," but "these are choices made by the Government, not the Defendant, and are properly attributed to the Government."[55] "[R]espect for prosecutorial discretion does not mean that the Government always should receive complete absolution for decisions whose impact on pretrial detention is foreseeable."[56] The Government, however, has an absolute right to pursue an interlocutory appeal; thus delays attributable to an appeal alone may not constitute delay by the prosecution for purposes of *Hare.*[57]

---

[50] *Hare,* 873 F.3d at 800.

[51] *Stanford*, 722 F. Supp. 2d at 810.

[52] *Id.* (citations omitted); *see also United States v. Simpson*, Cr. No. 09-249, 2010 WL 3283053, at *3 (N.D. Tex. Aug. 19, 2010), *aff'd*, 408 F. App'x 830 (5th Cir. 2011); *Faulkner*, 2020 WL 374543, at *8.

[53] *United States v. Wright*, 649 F. Supp. 3d 1333, 1338 (S.D. Ga. 2022) (citations omitted).

[54] *Hofstetter*, 2017 WL 4079181, at *9; *see also Rush*, 2017 WL 6541436, at *5 ("Thus, delay caused even by neutral reasons, such as strategic case management choices that foreseeably extend the case, may be attributable to the government." (citations omitted)).

[55] *Hofstetter*, 2017 WL 4079181, at *7 (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).

[56] *United States v. Bobbitt*, Cr. No. 09-331, 2013 WL 3049167, at *6 (W.D.N.Y. June 17, 2013).

[57] *Shareef*, 907 F. Supp. at 1485 (noting that an appeal alone does not constitute delay by the prosecution for purposes of due process considerations); *United States v. Cos*, Cr. No. 05-1619, 2006 WL 4061168, at *18-19 (D.N.M. Nov. 15, 2006) (recognizing that, while appeal delay is not charged against the Government, time on appeal spent on a jurisdictional issue caused by the Government is properly charged against it).

In assessing delay, the Court need not determine with precision the amount of pretrial delay attributable to the prosecution, nor assess the extent to which the Government may have been at fault in contributing to the delay.  It suffices that, even if not deserving of blame, the Government bears a responsibility for a portion of the delay significant enough to add considerable weight to the Defendant's claim that the duration of detention has exceeded constitutional limits.[58]  In this case, substantial delays have resulted from the Government's decision to file a superseding indictment adding five additional charges of drug and weapons violations to this property damage/arson case, with the additional discovery issues incident to those additional charges, its failure to seek expedited appeal of the suppression ruling, and its objection to severance pending the Fifth Circuit's resolution of its appeal on the suppression ruling.  These strategic decisions, while not inherently improper or otherwise suggestive of bad faith, are nonetheless decisions made by the Government, not the Defendant, and for which the Government bears the responsibility for the trial delays caused by those decisions.

A substantial portion of the delay in this case is attributable to the Government's strategic decisions.  This factor does not support a finding that continued pretrial detention is consistent with due process.  Rather, it weighs in favor of finding that this 24+ months of pretrial detention crosses the line from regulatory to punitive, in violation of due process.

## III.    <u>CONCLUSION</u>

The record supports the initial detention decision and the decision to deny the § 3142(f) motion to re-open.  As to the § 3145(b) due process motion, the mere fact that pretrial detention has

---

[58] *United States v. Gonzales Claudio*, 806 F.2d 334, 342-43 (2d Cir. 1986), *distinguished in Stanford*, 722 F. Supp. 2d at 808 n.3 (noting in *Gonzales Claudio*, the defendants faced potential pretrial detention of 22 months, and the prosecutorial delay—including the Government's delay in disclosing the existence of certain evidence—was significant enough to add considerable weight to the claim that the duration of detention exceeded constitutional limits, which was not the case in *Stanford*); *see Rush*, 2017 WL 6541436, at *5 ("Thus, delay caused even by neutral reasons, such as strategic case management choices that foreseeably extend the case, may be attributable to the government.").

exceeded 24 months does not, in itself, establish that detention has crossed from regulatory to punitive. Were Defendant's trial scheduled within the next two months, there would not likely be a due process concern. But in this single-defendant case, when the 24+ months of detention is considered along with the case's lack of complexity, the Government's decision to combine drug and weapons charges on two separate dates with the original arson/property damage counts occurring on yet another date, the speculative nature of any future detention period due to the pending interlocutory appeal, the Government's failure to seek an expedited appeal, the Government's objection to severance of Counts 1 and 2, and the absence of any trial date in the foreseeable future, continued pretrial detention crosses from regulatory to punitive in violation of due process.

Accordingly, for the foregoing reasons,

**IT IS RECOMMENDED** that, after *de novo* review, Defendant's objections to the initial detention decision and the decision denying the § 3142(f) motion to re-open be **OVERRULED** and, after *de novo* review, those decisions be **ADOPTED**.

**IT IS FURTHER RECOMMENDED** that Defendant's § 3145(b) Due Process Motion for Release be **GRANTED** and that Defendant be released on bond subject to all conditions necessary to adequately protect the safety of the community.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object.[59]

New Orleans, Louisiana, this ___2nd___ day of July, 2025.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[59] *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).